**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 6:21-CR-41 (CJN)** |
| | : | |
| **THOMAS GALLAGHER,** | : | |
| | : | |
| *Defendant.* | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Thomas Gallagher to one month of home confinement, a probationary term of three years, 60 hours of community service, a fine, and $500 in restitution.

I.    <u>**Introduction**</u>

Gallagher participated in the January 6, 2021, attack on the United States Capitol – a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured over 100 law-enforcement officers, and resulted in over $1.4 million worth of property damage.

Gallagher stands before this Court to be sentenced on a misdemeanor conviction, but his conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed.

The government is requesting a one-month term of home confinement and probation based on an assessment of the relevant sentencing factors.  Gallagher entered the Capitol and remained until he was arrested, despite glaring evidence of a violent riot all around him inside the Capitol, including individuals hurling chairs at police officers.  His conduct was, however, on the lower end of the spectrum of criminality on January 6, and he has demonstrated substantial contrition for participating in the riot.  In addition, he moved a chair other rioters had thrown down a stairwell, video evidence is consistent with his assertion that he admonished another rioter not to throw a chair inside the building, and he consented to a voluntary interview with the Federal Bureau of Investigation ("FBI") after his arrest on federal charges.

II.     **Factual and Procedural Background**

*The January 6, 2021, Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the Capitol in ECF No. 76, at 1-3.  As this Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most violent—contributed, directly and indirectly, to the violence and destruction of that day.

*Gallagher's Role in the January 6, 2021, Attack on the Capitol*

Gallagher traveled from New Hampshire to attend the rally the former president, Donald Trump, planned to hold in Washington, D.C., on January 6, 2021.  After attending the rally that day, Gallagher made his way to the Capitol.

Around the time Gallagher entered the Capitol, U.S. Capitol Police ("USCP") officers had already been under attack by rioters outside the building and fell back to a makeshift recovery area they had established in the Capitol Crypt.  Before long, rioters also breached that recovery area, and began throwing objects and unknown liquid substances at the officers.  The officers retreated

down a stairwell to the Capitol Visitor Center ("CVC"), which is also part of the Capitol.  Some rioters threw chairs at the officers.  At approximately 2:30 p.m., surveillance video captured officers retreating down the stairwell as chairs tumbled behind them.  The officers then fell back to the end of a corridor in the CVC that led to an atrium on the House of Representatives side of the building.

Shortly after 2:30 p.m., within seconds of chairs plummeting down the stairwell and one escalator, video surveillance captured Gallagher walking down the stairwell to the CVC.  He carried one of the chairs that had been blocking the stairwell and placed it on the floor in front of the stairs.  These screenshots from the video show a 32-second sequence in which officers (circled in blue) hurriedly retreat down the stairwell as chairs tumble behind them, Gallagher (circled in red) descends the stairwell carrying a chair, and multiple chairs and an unknown object (circled in yellow) lie strewn about the CVC's floor:







Gallagher and others proceeded to a corridor at the end of which U.S. Capitol Police officers had formed a defensive line. At approximately 2:31 p.m., Gallagher threw up his arms while looking in the direction of the officers' line, as depicted in the center of this screenshot:



At approximately 2:32 p.m., Gallagher walked with other individuals toward the end of the corridor. At one point, he reached out to another rioter who had picked up a chair, in a manner consistent with admonishing that person, as depicted in this screenshot (circled in red):



The other individual put the chair down seconds later.

Gallagher eventually made his way to the end of the corridor where the officers were positioned.  The officers issued commands for the rioters to leave the building.  Gallagher admitted hearing an officer tell him, "[Y]ou cannot remain in the building," and claimed he did not know where to go after hearing the officer's admonition.  Presentence Report ("PSR") at 8.  When rioters refused the officers' commands, the officers began arresting individuals who had unlawfully entered the building, including Gallagher, at about 2:39 p.m.

The FBI uncovered no evidence that Gallagher engaged in violent or disruptive conduct at the Capitol grounds or inside the building.  Gallagher cooperated with law enforcement following his arrest, including consenting to be interviewed by the FBI.

Gallagher knew at the time he entered the Capitol that he did not have permission to enter the building and he paraded, demonstrated, or picketed inside the building.

*The Charges and Plea Agreement*

Gallagher was initially arrested at the Capitol on January 6, 2021, and issued a summons to return to D.C. Superior Court.  On January 7, 2021, Gallagher was charged by complaint with violating 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2).  On January 13, 2021, he was rearrested on the federal complaint in the District of New Hampshire.  On January 15, 2021, he was charged by an initial information with four misdemeanor counts.  On January 21, 2021, Gallagher was charged by an Amended Information with four counts, violations of 18 U.S.C. §§ 1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2)(D) and (G).  On July 15, 2021, he pleaded guilty to Count Four of the Amended Information, which charged a violation of 40 U.S.C. § 5104(e)(2)(G).  In his plea agreement, Gallagher agreed to pay $500 in restitution to the Department of the Treasury.[1]

---

[1]  The actual payee of the restitution should be the Architect of the Capitol, as indicated in the PSR at 18.

### III.   <u>Statutory Penalties</u>

Gallagher now faces sentencing on a single count of 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000. As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559(a)(7); U.S.S.G. §1B1.9.

### IV.   <u>Sentencing Factors Under 18 U.S.C. § 3553(a)</u>

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6).

#### A.  The Nature and Circumstances of the Offense

The attack on the Capitol on January 6, 2021, is a criminal offense unparalleled in American history. It represented a grave threat to our democratic norms; indeed, it was one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.  So too does the conviction this defendant now faces.  Picketing, demonstrating, or parading at the Capitol as part of the riot on January 6 was not like picketing at the Capitol some other day, without other or with relatively few rioters present.

All defendants should be sentenced based on their individual conduct.  But this Court should note that each individual person who entered the Capitol on January 6 did so under the most

extreme of circumstances, and Gallagher is no exception. As individuals entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob.  Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement.  Like many others who smelled chemical irritants, Gallagher admitted to the PSR writer that he "got hit with some stray pepper spray floating through the crowd" before he entered the building.  PSR at 8.

Additionally, while looking at a defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.  While these factors are not exhaustive or dispositive, they help to place each individual defendant on a spectrum as to their fair and just punishment.

Gallagher also observed the disarray and disorderly conduct of a riot inside the building. He descended the stairwell to the CVC less than 30 seconds after USCP officers retreated down those same stairs as rioters threw chairs at them.  Video evidence shows, and Gallagher admitted, he picked up a chair lying on its side in the stairwell landing.  *Id.* at 8.  He walked by the chairs thrown at the officers as they lay strewn by the base of the stairwell.  The indications were clear that a riot was occurring around him, yet he did not turn back.  He remained in the CVC for

approximately nine more minutes until officers tackled and arrested him.  *Id* at 9.  Make no mistake, neither Gallagher nor any other rioter was a mere tourist that day.

The government has no evidence that Gallagher engaged in any violence or destruction of property.  The defense proffered to the government that Gallagher put his arm on a younger rioter and admonished him not to throw a chair in the CVC, and the video evidence is consistent with that representation.  Nor does the government have reason to believe Gallagher destroyed evidence.  To the contrary, he consented to a post-arrest interview with the FBI.

To his credit, Gallagher expressed an early desire to resolve his case.  His attorney shared with the government a letter Gallagher wrote on April 5, 2021, in which Gallagher referred to the January 6 attack as a "terrible event."  He expressed great remorse for his actions and the impact they had on law-enforcement officials, and for contributing to the "disruption, fear, and evacuation of the Senate, Congress members, and other politicians during the certification of the election." He also stated, "I regret my lack of judgment beyond anything I have ever felt."  Gallagher repeated this statement of contrition to the PSR writer.  *Id*.

The nature and circumstances of the offense supports a sentence of incarceration. However, for misdemeanor defendants who, like Gallagher, engaged in conduct that was less egregious considering the nonexclusive factors listed above and demonstrate remorse for their actions, the government is more likely to recommend a more lenient sentence.

### B.  The History and Characteristics of the Defendant

As set forth in the PSR, Gallagher does not have a prior criminal conviction.  PSR at 10. He would likely have zero points if the Sentencing Guidelines did apply to his offense of conviction. USSG § 4A1.2(c)(2).  Accordingly, he would be in Criminal History Category I. USSG §§ 4A1.1, 5A.  Gallagher is a retiree and receives a pension following a 32-year career with the

Department of Defense.  While a former federal employee should have known that participating in the riot was a grave crime—a  factor that is arguably aggravating—his  lack of criminal history supports a more lenient sentence.

The government also notes that from an early point in the case, Gallagher, through his attorney, expressed a desire to plead guilty and express remorse for his conduct. When recommending an appropriate sentence, the government gives significant weight to Gallagher's prompt resolution of this case and his contrition.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the Capitol building and grounds, and all that it involved, was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[2] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases arising out of the riot on January 6, 2021, including misdemeanor cases.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-00238 (TFH), Tr. 8/4/2021 at 3 (As Judge Hogan noted, "As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually – should be expected.")  Although this specific factor weighs in favor of incarceration, the other factors identified in this memorandum favor a more lenient sentence.

---

[2] FBI Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021) (hereinafter "FBI Director Wray's Statement"), available at: https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf.

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). The demands of general deterrence weigh in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.  Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. For the violence at the Capitol on January 6 was cultivated to interfere, and did interfere, with one of the most important democratic processes we have: the transfer of power. As noted by Judge Moss during sentencing in *United States v. Paul Hodgkins*, 21-cr-00188 (RDM):

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. 7/19/2021 at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence.  This was not a protest.  *See id.* at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.").  And it is important to convey to future rioters and would-be mob participants—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

On one hand, Gallagher knew that his entry in the Capitol was unlawful, and it was evident to him and anyone else at the Capitol that the situation outside and inside the building had devolved into a riot.  On the other hand, his conduct falls toward the low end of the spectrum of criminality that occurred on January 6.

As discussed above, Gallagher's actions at the Capitol were limited, and he was willing to cooperate with law enforcement when he was rearrested in New Hampshire on January 15. Gallagher's expression of contrition and his shame for what he did suggest that he understands the gravity of his offense and that he will not reoffend – or at least he will think twice before engaging in further criminal conduct.  Although the need to deter what happened in general on January 6 favors incarceration, the facts of Gallagher's specific case and his subsequent actions favor a more lenient sentence.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, to assault on law-enforcement officers, to conspiracy to corruptly interfere with Congress. Each offender must be sentenced based on his or her individual circumstances, but with the backdrop of January 6 in mind. Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment. The misdemeanor defendants will generally fall on the lesser end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes.   A probationary sentence should not necessarily become the default.  Indeed, the government invites the Court to join Judge Lamberth's admonition that "I don't want to create the impression that probation is the automatic outcome here because it's not going to be."  *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL),

Tr. 6/23/2021 at 19; *see also United States v. Valerie Ehrke*, 1:21-cr-00097(PFF), Tr. 9/17/2021 at 13 ("Judge Lamberth said something to the effect . . . 'I don't want to create the impression that probation is the automatic outcome here, because it's not going to be.' And I agree with that. Judge Hogan said something similar.") (statement of Judge Friedman).

After a review of the applicable § 3553 factors, the government believes that a one-month term of home confinement followed by probation, plus a fine and the agreed-upon restitution, is appropriate.

**V.      Conclusion**

Sentencing here requires that the Court carefully balance the various factors set forth in 18 U.S.C. § 3553(a).  As detailed above, some of those factors support a sentence of incarceration, but most of them support a more lenient sentence.  Balancing these factors, the government recommends that this Court sentence Gallagher to one-month of home confinement, 60 hours of community service, a fine, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his relatively brief entry into the Capitol and his early acceptance of responsibility.  It also allows continued monitoring of Gallagher in the event of future participation in similar conduct.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:      */s/ Seth Adam Meinero*
SETH ADAM MEINERO
Trial Attorney
Detailee
United States Attorney's Office for the
  District of Columbia

13

D.C. Bar No. 976587
202-252-5847
Seth.Meinero@usdoj.gov

*/s/ Susan Lehr*
SUSAN LEHR
Assistant United States Attorney
Detailee
United States Attorney's Office for the
 District of Columbia
Nebraska Bar No. 19248
402-661-3700
Susan.Lehr@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 5, 2021, I served a copy of the foregoing on all

parties to this matter as listed in the Court's Electronic Case Files system.

*/s/ Seth Adam Meinero*
SETH ADAM MEINERO
Trial Attorney
Detailee

15