IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | | Criminal No. 1:21-cr-00041-CJN |
| v. | : | |
| | | The Honorable Carl J. Nichols |
| THOMAS GALLAGHER | : | |
| | | Sentencing: October 13th, 2021 |
| Defendant. | : | |

### DEFENDANT'S POSITION ON SENTENCING

COMES NOW Thomas Gallagher, by counsel, and respectfully submits this memorandum on Defendant's Position on Sentencing in this matter. In support thereof, Defendant states as follows:

Mr. Gallagher was arrested on January 6th, 2021 inside the U.S. Capitol Visitor's Center along with five (5) others. In addition to others arrested on that day, many hundreds more have subsequently been identified and charged with various offenses relating to the events of January 6th. Initially charged with four misdemeanor counts, Mr. Gallagher has plead guilty to one count of "Parading, Demonstrating, or Picketing in a Capitol Building," in violation of 40 U.S.C. §5104(e)(2)(G), and punishable by up to six (6) months imprisonment and/or a fine of not more than $5,000. Pursuant to an agreement with the government, upon sentencing the government shall dismiss the remaining counts. There is no agreement as to sentencing other than that Defendant agrees to pay restitution in the amount of $500 to the Architects of the Capitol.

Mr. Gallagher's incursion into the U.S. Capitol on January 6th was a product of significant and serious misjudgment and Mr. Gallagher has regretted this decision ever since, stating "I regret my lack of judgement beyond anything I have ever felt" and "I realize I was wrong and

1

this was such a tremendously 'bad move' on my behalf." *April 5, 2021 Letter, provided as Exhibit 1*. Mr. Gallagher entered the U.S. Capitol as part of the crowd on a whim and without any planning or coordination beforehand. He has no association to any militia or right-wing militant groups and had no violent intent upon entering the Capitol. Once inside the Capitol and prior to his arrest at approximately 2:30pm, Mr. Gallagher did not participate in any destructive or violent activities and actively encouraged at least one rioter to put down a chair that he appeared poised to throw. The rioter complied and set the chair down. Mr. Gallagher has never bragged or taken pride in his role in this tragic event and has never posted any such comments to any social media. He is a 62-year old retired U.S. government employee, a husband and a father. Mr. Gallagher has no prior criminal convictions. He is an alcoholic who has proudly maintained his sobriety for approximately 30 years. Mr. Gallagher considers his actions on January 6th as a black stain on his reputation and character. He intends to allocate at sentencing and has requested to be sentenced in person in order to take full responsibility for his actions.

Mr. Gallagher has been forthright with U.S. probation and agrees with the pre-sentence investigation report. Because Mr. Gallagher has plead guilty to a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply.

**Section 3553(a) Factors**

     a. <u>Nature and Characteristics of the Offense and Characteristics of the Defendant – 18 U.S.C. §3553(a)(1)</u>

        i. <u>Mr. Gallagher's Involvement in the Offense Conduct</u>

The details of Mr. Gallagher's offense conduct are significantly discussed in the PSR and not fully recounted here. Mr. Gallagher had no intention of storming the U.S. Capitol when he traveled on a bus to the Donald Trump rally on January 6th, 2021. However, he does not dispute

in the slightest that he unlawfully entered the Capitol and does not diminish the damage done that day, not only to property but to every life affected as a result directly and indirectly. Undersigned counsel has reviewed numerous sentencing memoranda filed by the government in these cases and both counsel and Mr. Gallagher agree that "there were no tourists" inside the Capitol on that day. Mr. Gallagher has never diminished the enormity of the January 6th riots nor his participation. He simply wishes to take responsibility for his actions and move forward with his life.

Mr. Gallagher entered the U.S. Capitol along with a large crowd through what he believes was the Southwest entrance. He did not break any windows or doors upon entry to the Capitol. Once inside the Capitol, Mr. Gallagher is unsure of exactly where he went but fairly quickly found himself in the U.S. Capitol Visitor's Center as captured on surveillance footage.

Within the U.S. Capitol Visitor's Center, Mr. Gallagher is seen walking down a hallway with others. One man to Mr. Gallagher's right is holding a chair and appears poised to throw the chair.[1] Mr. Gallagher is seen approaching the individual and placing a hand on his shoulder to admonish him to set the chair down. Mr. Gallagher recalls speaking with the rioter and encouraging him to remain nonviolent. The man put the chair down. Mr. Gallagher and others then walked out of view.

Minutes later, Mr. Gallagher and others came to a line of U.S. Capitol officers within the Capitol Visitor's Center. Mr. Gallagher recalls speaking with one of the officers and inquiring where they were supposed to go. Officers informed the crowd that they had to leave the build-

---

[1] Minutes prior, the same camera captures U.S. Capitol Police officers retreating down the hallway, pursued shortly thereafter by members of the mob throwing chairs in their general direction. It is not alleged and Mr. Gallagher denies being a part of that initial group of rioters pursuing officers.

ing. As Mr. Gallagher stood near the officers, an order appears to have been given to start arresting members of the crowd. Mr. Gallagher and at least five (5) others were arrested immediately. Mr. Gallagher did not resist arrest but was taken to the ground and received a significant amount of pepper spray to the face. He spent the remainder of the day and evening being moved from room to room within the U.S. Capitol with officers attempting to remain safe from the growing mob. Mr. Gallagher recalls speaking with officers at length and developing a friendly rapport with them. Eventually Mr. Gallagher and others were taken to a local detention facility (likely a Metropolitan Police Department), being booked and then released on a summons to return to the D.C. Superior Court in June, 2021.[2] He found a motel in downtown Washington, D.C. and rented a U-Haul truck[3] the following morning to return home to New Hampshire.

      ii.      <u>Characteristics of Defendant – Thomas Raymond Gallagher</u>

Thomas Gallagher was born in Springfield, Massachusetts on September 15th, 1959, the youngest child of Raymond Gallagher, Sr. and Annette Gallagher. Tom's older sister, Hollis, was born in 1956. Tom's father was a firefighter and his mother a homemaker and occasionally a seamstress (working from home). Tom considered his family working or middle class. Although Tom experienced a relatively stable childhood, he and the rest of his family suffered from his father's alcoholism. Tom denies physical or sexual abuse but describes his father as a "mean drunk," verbally and psychologically abusing Tom's mother, sister and himself. For this reason Tom never felt close with his father.

As a child, Tom enjoyed sports (baseball, swimming, diving, bike riding, track and field)

---

[2] As the Court is aware, Mr. Gallagher and his five (5) co-defendants were subsequently charged federally and Mr. Gallagher was placed on pre-trial supervision with this Court.
[3] There were no rental cars available.

and music. Tom began playing drums at the age of 15 which remains a life-long passion.



Following graduation from high school, Tom matriculated to North Adams State College (now Massachusetts College of Liberal Arts), graduating with a Bachelor of Science in Business Administration in 1983. Tom went on to obtain employment with the U.S. Department of Defense as a quality control analyst in Andover, Massachusetts. Tom was initially hired in 1986 by the Defense Logistics Agency and, in 2000, transferred to the Defense Contract Management Agency. Tom worked continuously for the Department of Defense in this capacity until his retirement in 2018. At the time of his retirement, Tom had reached the pay scale level of GS-12. During the majority of his career, Tom was required to maintain a top-secret security clearance.

Tom met his wife, Valerie, at North Adams State College in 1982. He proposed and they wed on April 30th, 1995 and have remained together ever since. Valerie worked as a guidance counselor for the public school system in Massachusetts until her retirement. Tom and Valerie have one daughter, Rachel, born in 2000.





Following their respective retirements, the Gallagher family moved to Bridgewater, New Hampshire, along the shores of Newfound Lake.



Having purchased the vacant plot of land in December 2006, it was their dream to build their retirement home there. That dream was achieved in 2018 with the completion of the Gallagher home in New Hampshire. Today, Tom, Valerie and Rachel enjoy spending their time snowmobiling, boating, kayaking, hiking, going to concerts and attending Rachel's cheerleading competitions. When he can, Tom enjoys sitting in as a drummer with fellow local musicians on gigs.

6

Shortly after high school, Tom developed an addiction to alcohol, often drinking heavily throughout college and afterwards. He would deny any significant impact on his employment or family relationships, but also recognized other negative impacts of the addiction on Tom's behavior and life. Just months after Tom and Valerie wed in 1995, Tom stopped drinking and began attending Alcoholics Anonymous meetings. A struggle at first, Tom has maintained his absolute sobriety from alcohol ever since (now 26 years). Tom has been active in the AA community and serves as a sponsor to others. *See letter from Keith Burdin, provided as Exhibit 2*.

Tom has no prior criminal convictions. Tom has no connections to any far-right groups, activists or militias. However, as his life-long friend John Izzo attests, Tom began watching far "too much Fox News" and "didn't have anything else going on" during the 2020 Presidential election. PSR, p. 14. Tom began to believe the theories espoused on national TV that the 2020 election results were fraudulent. In late December, Tom learned of the planned rally by then-president Donald Trump on January 6th. To show his support, Tom decided to attempt to attend. He sought information from the regional Facebook page, 'Lakes Region Community Page.' There someone responded that they had tickets on a bus leaving Newton, Massachusetts destined for the Trump rally in Washington, D.C. Neither Tom's wife nor daughter had any interest in attending this rally, so Tom bought one ticket for $75.

Without restating the facts surrounding the offense, Tom boarded that bus with no intention of visiting, let alone invading, the U.S. Capitol or in any way impeding the work of Congress in certifying the election, other than to show his support for then-president Trump.

    b.    <u>18 U.S.C. §3553(a)(2)(A) - The Need for the Sentence Imposed:</u>

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to

> provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Tom has no prior record of criminal convictions. He is a 62-year old retiree with an accomplished career with the federal government. He has a 26-year record of sobriety. Tom has fully accepted responsibility for his actions and never attempted to minimize his involvement or his actions on January 6th. He has maintained his regret, remorse and shame since the moment of his arrest. Tom's actions that day do not reflect who he is. *See letters from John Izzo, Cindy L. Young and John Nettis, provided as Exhibits 3, 4 and 5, respectively*.

Furthermore, Tom has been nothing but compliant and cooperative with authorities, beginning with his arrest in the Capitol, extending to his re-arrest by FBI agents in New Hampshire, to his agreement and offer of cooperation (including a review of any social media accounts and potential debrief proffer session with FBI agents), to his cooperation with the probation office in their pre-sentence investigation. For example, in late August 2021, *after Tom's pre-sentence interview with probation*, undersigned counsel was notified by the U.S. Marshall's office in New Hampshire that Tom needed to complete certain booking procedures that were never done at the time of his arrest in January by the FBI. Counsel informed Mr. Gallagher and Tom drove an hour from home to complete those missed booking procedures later that same day. Lastly, Tom has been compliant with pre-trial supervision, calling on time every week and requesting permission to leave the state when needed or desired (both requests granted).

Considering his acceptance of responsibility, remorse, and pre-trial release compliance, it is clear that Tom presents no risk of recidivism.

c.  18 U.S.C. §3553(a)(3) The Kinds of Sentences Available

A violation of 40 U.S.C. § 5104(e)(2)(G) is a Class B misdemeanor, punishable by up to 6 months of incarceration and/or a fine of not more than $5,000. As a federal criminal misdemeanor, a suspended sentence conditioned on probation is available. There are no sentencing guidelines for a Class B misdemeanor, the statutory sentence range equivalent to the lowest sentencing range available within the guidelines.

This Court may exercise its discretion in sentencing Mr. Gallagher, after consideration of all of the other statutory considerations outlined in 18 U.S.C. §3553(a), and sentence Mr. Gallagher to a term of incarceration entirely suspended contingent on his successful completion of a term of probation. It should be noted that Mr. Gallagher has agreed to pay restitution in the amount of $500 at the request of the U.S. government.

d.  18 U.S.C. §3553(a)(4) & (5)

Defendant submits that these subsections are not applicable to the instant charge as there are no federal sentencing guidelines for a Class B misdemeanor (§3553(a)(4)) and there has been no pertinent policy statement with regard to the sentencing of this offense (§3553(a)(5)).

e.  18 U.S.C. §3553(a)(6) The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct

Defendant Mr. Gallagher is charged with one count of a Class B misdemeanor related to his trespass in a federal building. Standing alone, and given his age and lack of any criminal convictions, would usually result in a sentence not involving active incarceration.

However, Defendant agrees and submits that the events on January 6th are of a different

nature than an ordinary trespass to federal property. Hundreds of individuals, if not more, trespassed on Capitol grounds, generally in support of an attempt to protest and potentially prevent Congress from certifying the election results of the 2020 presidential election. Many engaged in violent conduct; others did not. Some entered the Capitol building itself; others did not. Some violated the Senate floor, the House floor and/or offices of lawmakers; others did not. Some encouraged others and bragged on social media; others did not. The actions of the whole are to be condemned in the strongest terms. However, the repercussions for individual defendants should reflect their particular participation, their individual backgrounds including criminal history, their intent at the time of the offense and their actions following the offense (i.e., acceptance of responsibility or braggadocio).

To his credit, Tom Gallagher is one of the first[4] in his group of defendants to agree and plead guilty.[5] The only co-defendant to have plead guilty prior to Mr. Gallagher was held in pre-trial detention for various and specific reasons and agreed to plead guilty and be sentenced to the statutory maximum (6 months) which was roughly equivalent to a sentence of time-served. Defendant argues that this person was differently situated in terms of sentencing.

While no one else charged along with Mr. Gallagher have been sentenced, others involved in the January 6th offense have been sentenced. For purposes of brevity and relevance, Defendant will focus only on those who have been found guilty of a misdemeanor within the Capitol (others have been found guilty of felony conduct and/or misdemeanor conduct outside of

---

[4] One co-defendant, who was held pending disposition, plead guilty and was sentenced to the statutory maximum which amounted to a sentence of time-served.

[5] Although plea negotiations were still ongoing through counsel and would not be resolved until July 9th, Tom Gallagher signed the plea agreement and statement of offense less than a week after receiving it (on June 21st). The difference between June 21st and July 9th should be attributed to undersigned counsel negotiating in good faith.

the Capitol).

On June 23rd, 2021 this Court sentenced Anna Morgan-Lloyd, 49, to three years of probation at the recommendation of both the defendant and U.S. Attorney's Office. (See U.S. Attorney's Office Memorandum in Aid of Sentencing, provided). Supporting their recommendation for a non-jail sentence, the U.S. Attorney's Office focused on Morgan-Lloyd's lack of pre-planning or coordination in entering the Capitol, the lack of evidence that she incited others to commit acts of violence or committed acts of violence against law enforcement herself, the lack of evidence that she destroyed or stole property from the Capitol and the fact that she remained in a limited part of the building for a limited period of time. The government also focused on her expressions of remorse in her actions during the pendency of her criminal prosecution. The Court sentenced Morgan-Lloyd to three years of probation, 120 hours of community service and restitution in the amount of $500. The government did note, however, that Morgan-Lloyd initially bragged of her participation in the January 6th event on social media:

> While inside the Capitol building, the Defendant was photographed with Bissey and two other individuals, one of whom is holding a Trump campaign flag. Bissey later posted the photo on Facebook with the caption, "Inside the Capitol Building."
>
> On January 6, 2021, in response to a post by another rioter, the Defendant wrote, "*I'm here. Best day ever. We stormed the capital building me and Dona Bissey were in the first 50 people in.*"
>
> On January 7, 2021, Bissey posted a photo on Facebook, tagging the Defendant and another individual, and wrote, "*We are home. Thank You to ALL that messaged checking in and concerned. It was a day I'll remember forever. I'm proud that I was a part of it! No Shame. BTW turn off the #FakeNews.*" In a comment to this post, the Defendant wrote, "*That was the most exciting day of my life.*" The Defendant further commented, "*Dona Bissey I'm so glad we were there. For the experience and memory but most of all we can spread the truth about what happened and open the eyes of some of our friends.*"
>
> On January 8, 2021, Bissey posted two photos from the western front of the Capitol building. The photo included images of members of the mob climbing the

> scaffolding and another of a rioter holding a stolen and broken sign that read, "Speaker of the House." Bissey wrote on the post, "*This really happened! Anna Morgan-Lloyd took the photo*."
>
> On January 11, 2021, Bissey posted a photo on Facebook which showed individuals walking down the steps of the Capitol building. Bissey wrote, "On our way down" and tagged the Defendant.

(emphasis added).

Defendant's case is distinguishable from that of Anna Morgan-Lloyd. Like Morgan-Lloyd, Defendant has taken responsibility and expressed remorse for his actions. Unlike Morgan-Lloyd, however, Defendant never bragged or posted statements or images to social media depicting his involvement in the events of January 6th. Like Morgan-Lloyd, Defendant did not engage in any violent conduct outside or within the U.S. Capitol. Unlike Morgan-Lloyd, Defendant actively encouraged another rioter to act peacefully and desist from throwing a chair.

Likewise, Valerie Elaine Ehrke was sentenced on September 17th, 2021 after having plead guilty to the same charge as Defendant Mr. Gallagher. In that case, again the U.S. Attorney's Office recommended a non-jail sentence of probation and 40 hours of community service. In so arguing, the U.S. Attorney's Office cited Ehrke's limited time within the building (approximately 1 minute), lack of destruction of property and limited social media activity following the offense. However, in their memorandum in aid of sentencing, the government noted that Ehrke, after attending the Trump rally and returning to her hotel room, chose to go back out to the U.S. Capitol after watching on television that the crowd was surrounding the building. She then traveled back to the national mall and to the U.S. Capitol, filming and uploading video to Facebook including the caption "on the way to the breached capitol building [sic]." She films herself entering the U.S. Capitol through the North entrance. Once inside, Ehrke finds herself at the back of a large crowd as a high-pitched alarm sounds within the building. Police in front of the crowd

begin forcing the crowd back outside. As part of the crowd, Ehrke is forcibly pushed back out of the building. She is only in the building for about one minute. The government's memorandum follows:

> When she posted the above-referenced video that she took of her and others in the hallway, she added this caption: "*We made it inside, right before they shoved us all out. I took off when I felt pepper spray in my throat! Lol*." A screenshot of that post is reproduced below. The government would note that the defendant's Facebook profile picture in the screenshot below is a flaming "Q," which is commonly associated with Q-Anon, a far-right conspiracy group.

(emphasis added).

The government also highlights that Ehrke was amongst the first in her defendant group to plead guilty (on June 30th, 2021). Additionally, Ehrke is noted to have at least one criminal conviction, for distribution of marijuana.

Again, Defendant Mr. Gallagher is in ways similarly situated to Ms. Ehrke, and in ways dissimilar. Like Ehrke, Mr. Gallagher was only in the Capitol for a brief period of time. Like Ehrke, Mr. Gallagher's presence in the Capitol was cut short by police intervention. Like Ehrke, Mr. Gallagher is one of the first to plead guilty. Unlike Ehrke, however, Mr. Gallagher did not leave the scene of the crowd and return only to enter the Capitol. Unlike Ehrke, Mr. Gallagher never posted images or videos to social media. Unlike Ehrke, Mr. Gallagher has no criminal convictions. Unlike Ehrke, Mr. Gallagher is not associated with any conspiracist groups such as Q-Anon.

Others sentenced recently include Andrew Ryan Bennett,[6] Danielle Doyle,[7] Jessica and

---

[6] Sentenced on 10/1/21 to a term of 24 months of probation including three months home confinement.
[7] Sentenced on 10/1/21 to a term of 2 months of probation.

Joshua Bustle,[8] Derek Jancart and Erik Rau[9]. It should be noted in the cases of Derek Jancart and Erik Rau that there were significant aggravating factors.[10]

The case of Danielle Doyle is interesting because it is alleged that Doyle entered the Capitol through a broken window (confirmed with video evidence), participated in a confrontation with Capitol police within the Capitol (yelling at them from within the crowd), remained in the Capitol for approximately 24 minutes and posted images and messages on social media relating to her incursion. As the government states in their sentencing memorandum, "Ultimately, Doyle walked through three levels of the U.S. Capitol building." In the days after the riot, Doyle texted another person "*I literally can't do anymore Q shit. Brandon Stracka was arrested today. He didn't even go in the capitol. This is fucking insane*," referencing her participation in the Q-Anon conspiracy movement. Additionally, the government expressed some skepticism of Doyle's subsequent remorse based on previous representations made to FBI and other law enforcement agents:

> While the government wants to credit the defendant's remorse in her allocution statement, we also recognize that Doyle has not been fully transparent with law enforcement and that we have no support for Doyle's remorse, other than her representations in her allocution statement.

---

[8] Sentenced on 8/30/21 to a term of 24 months of probation including 60 days of home confinement (Jessica); sentenced on 8/30/21 to a term of 24 months of probation including 30 days of home confinement (Joshua).
[9] Sentenced on 9/29/21 to a term of 45 days of active incarceration (Jancart); sentenced on 9/29/21 to a term of 45 days of active incarceration (Rau).
[10] ". . . (1) the defendant prepared for violence by bringing a gas mask and two-way radios to Washington, D.C.; (2) he was aware of the potential for violence because he responded to the Capitol only after hearing it had been "breached"; (3) he laughed and cheered while the forward line of the rioters broke through the police line and posted a video to Facebook of Rau screaming "we have you surrounded" at the police officers attempting to hold the line around the Capitol; (4) he penetrated the U.S. Capitol all the way to the Speaker's conference room; (5) his statements on Facebook after January 6 reveal a total lack of remorse; (6) he actively spread propaganda on social media by falsely downplaying the violence on January 6; (7) he likely destroyed evidence by deleting videos and message threads from his phone; and (8) his social media statements reveal he believes a revolution is coming and suggest the possibility of future violence by this defendant." *Sentencing Memorandum filed by the U.S. Attorney's Office on 9/24/21*.

The government requested a period of home confinement for two months, probation for two years and the completion of 60 hours of community service. Doyle was sentenced by this Court on October 1st, 2021 to two months of probation, a fine of $3,000 and restitution in the amount of $500.

While Defendant Mr. Gallagher also entered the Capitol, he did not travel as extensively throughout the building as Doyle, never yelled at law enforcement or encouraged others to confront law enforcement, never posted images or comments regarding the riot or his participation to social media and has no connection to Q-Anon or any other conspiracist groups. Furthermore, Mr. Gallagher actively encouraged a rioter to set down a chair (captured on surveillance footage) and has maintained his regret and remorse since his arrest (see statements of Valerie Gallagher, Rachel Gallagher, PSR, pp. 12-13; also see Letter of Thomas Gallagher, dated April 5th, 2021).

f. <u>18 U.S.C. §3553(a)(7) The Need to Provide Restitution to Any Victims of the Offense</u>

Defendant has agreed to pay restitution in the amount of $500 to the Architect of the Capitol as a condition of his plea and sentence in this case.

**Conclusion**

Defendant Tom Gallagher respectfully requests This Honorable Court impose a non-jail sentence in this case and, if the Court is so inclined, a minimal period of supervised probation. Tom readily accepts responsibility for his actions and was quick to agree to plead and be found guilty of a federal criminal offense. He is a retiree, has no history of criminal convictions, retired from a prestigious job with the Department of Defense, is not associated with any far-right militant or conspiracist groups, actively encouraged another rioter not to throw a chair, has never

bragged or publicly displayed his involvement in the January 6th riot and has been fully cooperative with authorities from the moment of his arrest.

Tom has felt immense shame and anxiety as a result of his actions on January 6th. He experienced periods of depression and sleeplessness as well as a significantly decreased appetite in the weeks immediately following the riot. In addition, when Tom was re-arrested in New Hampshire by federal agents, he had to spend one night at the local detention center in Keene, NH – an experience Tom has never before had to endure and one he will never forget. Days after his release Tom developed symptoms of COVID-19 and tested positive. Although impossible to verify, Tom believes he contracted the virus while incarcerated overnight. Tom has received anonymous threats in the mail and every stage of his prosecution has been extensively reported on by local media in New Hampshire, even so much as reciting the Gallagher family's assets and occupations based on court records. In short, Tom has no pride in his actions and rues the moments he made the fateful decisions to approach and enter the Capitol. While his family remain loving and supportive, Tom can't help but feel that he let them down. Tom accepts full responsibility for his actions and will accept whatever sentence this Court deems appropriate.



WHEREFORE Defendant Thomas Gallagher respectfully requests This Honorable Court sentence Defendant to restitution in the amount of $500 and a minimal amount of probation if the Court finds it reasonable and necessary.

Respectfully submitted,

THOMAS GALLAGHER

By counsel

　　　/s/ Sebastian M. Norton
Sebastian M. Norton, DC Bar #1008961
King, Campbell & Poretz, PLLC
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 Telephone
(703) 652-6010 Facsimile
sebastian@kingcampbell.com
*Attorney for Defendant*

CERTIFICATE OF SERVICE

    I hereby certify that on the 5th day of October, 2021, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification to counsel of record.

                                          */s/ Sebastian M. Norton*
                                           Counsel for Defendant